IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | CASE NO. 08-11904(TPA) |
| THAYER POWER & COMMUNICATION LINE CONSTRUCTION CO., INC., | |
| Debtor. | |
| THAYER POWER & COMMUNICATION LINE CONSTRUCTION CO., INC., | CHAPTER 11 |
| Movant, | |
| v. | |
| KEYBANK, N.A.; UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE; THE COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE ATTORNEY GENERAL; AND THE OFFICIAL UNSECURED CREDITORS COMMITTEE, | Related to Docket Nos. 3, 132, 137, 172, 173, 214, 219, 256 & 261<br><br>Document No. 288 |
| Respondents. | JUDGE AGRESTI |

**FIFTH STIPULATION TO EXTEND AMENDED FINAL STIPULATION AND ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**

THIS FIFTH STIPULATION AND ORDER (the "Stipulation and Order"), subject to the approval of the Bankruptcy Court, is entered into amongst the Debtor, Thayer Power and Communication Line Construction Company, Inc., a Pennsylvania corporation (hereinafter "Debtor") by and through its attorneys, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., and the Respondents, KeyBank National Association (hereinafter "KeyBank") by and through its attorneys, Buchanan Ingersoll & Rooney, P.C., the United States of America, Internal Revenue Service (hereinafter the "IRS") by and through its attorney, Edward J. Laubach, Jr., the Commonwealth of Pennsylvania, Office of the Attorney General (hereinafter "Commonwealth of

Pennsylvania") by and through its attorney, T. Lawrence Palmer, Esq., and the Official Unsecured Creditors Committee (hereinafter the "Committee") by and through its attorneys, Knox McLaughlin Gornall & Sennett, P.C.

WITNESSETH:

WHEREAS, on October 4, 2008 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of Pennsylvania, Erie Division, at Case No. 08-11904 (the "Bankruptcy Court");

WHEREAS, as defined herein, (i) "Cash Collateral" shall have the same meaning as set forth in Bankruptcy Code Section 363(a), (ii) the Debtor's use of which is subject to and governed by this Stipulation and Order; the Debtor's Cash Collateral, accounts and inventory as of the Petition Date shall hereinafter be referred to as the "Pre-Petition Cash Collateral"; (iii) the Debtor's Cash Collateral, accounts and inventory generated after the Petition Date shall hereinafter be referred to as the "Post-Petition Cash Collateral"; and (iv) the Pre-Petition Cash Collateral and the Post-Petition Cash Collateral shall hereinafter be referred to collectively as the "Collateral";

WHEREAS, the Debtor entered into a Business Loan Agreement (Asset Based) with KeyBank dated June 23, 2006 and delivered a corresponding Promissory Note to KeyBank in the amount of $8,500,000 (the "Original Note") and a Security Agreement granting KeyBank with a first priority security interest in, among other things, the Pre-Petition Cash Collateral;

WHEREAS, KeyBank perfected its first priority security interest in the Pre-Petition Cash Collateral by filing UCC-1 financing statements with the Secretary of the State of Pennsylvania;

WHEREAS, the Debtor defaulted under the term of the Original Note and the parties thereafter entered into a forbearance agreement dated as of July 10, 2008 (the "Forbearance

Agreement") whereby the Original Note was replaced by two separate notes: (a) an amended and restated term note in the original principal amount of $6,000,000 and (b) an amended and restated credit note in the original principal amount of $2,500,000 (together with the Original Note, the "Notes"; all agreements and other documents which evidence, secure or otherwise relate to the Notes the "Loan Documents"), and all existing collateral documents, except as specifically set forth in the Forbearance Agreement, remained in place and in full force and effect;

WHEREAS, as of the Petition Date, the aggregate principal amount due under the Notes was approximately $9,332,000, together with any over-advances, interest, fees, attorneys fees, costs and other applicable charges (the "Pre-Petition Indebtedness");

WHEREAS, the Debtor has acknowledged that: (i) the Notes and all other related Loan Documents and security agreements are valid and enforceable in accordance with their terms; (ii) the Debtor does not possess, and will not assert, any claim, counterclaim, setoff or defense of any kind or nature, which would affect the validity, enforceability and non-avoidability of any of KeyBank's Pre-Petition Liens or the Loan Documents or which would in any way reduce or affect the absolute and unconditional obligation of the Debtor to pay to KeyBank the entire amount due and owing under the Loan Documents and KeyBank possesses properly perfected security interests in and liens upon the Pre-Petition Collateral and that such security interests and liens are valid, perfected, enforceable, and non-avoidable pursuant to the Bankruptcy Code or other applicable law;

WHEREAS, the IRS filed a federal tax lien against the Debtor with the Prothonotary of Erie County Pennsylvania on July 23, 2008 by virtue of Debtor's failure to pay certain payroll and other taxes in the amount of $2,999,508.34;

WHEREAS, the IRS contends that, pursuant to the 45 day rule set forth in 26 U.S.C.

§ 6323(c), the IRS lien primes the KeyBank lien on the Pre-Petition Collateral generated after September 6, 2008; and

WHEREAS, on or about October 30, 2008, the Committee was formed; and

WHEREAS, on or about November 6, 2008, Guy Fustine, Esq., was appointed as counsel for the Committee; and

Based upon the foregoing stipulations of Counsel which the Court accepts, good and sufficient cause has been shown to justify the granting of the relief set forth herein and the entry of this Stipulation and Order, and that among other things, the entry of this Stipulation and Order will minimize the disruption of the Debtor's business and operation, permit the Debtor to meet payroll and other operating costs and expenses, and preserve and maintain the assets of this estate. Accordingly, entry of this Stipulation and Order is in the best interests of the Debtor, its creditors and other parties in interest.

NOW, THEREFORE, in consideration of the promises, covenants and agreements contained herein, the parties hereto agree as follows:

1. Subject to the terms and conditions of this Stipulation and Order, the Debtor is hereby empowered and authorized, pursuant to section 363(c)(2)(A) of the Bankruptcy Code, to use Cash Collateral arising from the Collateral and other cash proceeds in accordance with the provisions of this Stipulation and Order, for the sole purpose and limited to the amounts specified in this Stipulation and Order and to the extent set forth in the monthly budget attached hereto as Exhibit "A" (the "Budget").

2. As adequate protection of and for the Debtor's use of the Cash Collateral, in order to secure further the claims of KeyBank and the IRS, and to provide KeyBank and the IRS with adequate protection for the Debtor's use of Cash Collateral:

(a) The Debtor shall, and hereby grants to KeyBank and the IRS valid, perfected and enforceable security interests in and liens (the "Adequate Protection Liens") upon

the Post-Petition Collateral;

(b) For the Collateral, the priority lien positions of the IRS and KeyBank shall be the same as they existed on the Petition Date except as expressly set forth in paragraph 2(c) of this Stipulation and Order; and the value of the IRS and KeyBank liens shall not be greater post-petition than the value thereof at the time of the filing of this bankruptcy case plus accruals and advances thereafter and minus payments to the IRS and KeyBank therefore.

(c) Notwithstanding any contrary legal authority, including without limitation the 45 day rule set forth in 26 U.S.C. § 6323(c), KeyBank and the IRS shall share a co-equal first priority lien on the Collateral. Net liquidation proceeds from the liquidation of any Collateral shall be shared parri passu between KeyBank and the IRS on a 44.7% and 55.3% apportioned basis, respectively. KeyBank and the IRS shall enter into a separate Intercreditor Agreement concerning their respective rights in and to the Collateral;

(d) The Adequate protection Liens and security interests granted hereunder shall be deemed perfected as of the Filing Date;

(e) The Debtor shall continue to make adequate protection payments to KeyBank in the amount of $50,000 per month, and to the IRS in the amount of $25,000 per month throughout the term of this Stipulation and Order as more fully set forth in the Budget attached hereto as Exhibit "A."

3. Any provision of this Stipulation and Order or the Loan Documents to the contrary notwithstanding, if sufficient funds are not otherwise available from the Debtor's estate, KeyBank and the IRS will exclude from their Pre-Petition Liens, the Adequate Protection Liens, and any Superpriority (as hereinafter defined) claims referred to or granted herein, and make available to the Debtor's estate for payment through the earlier of (a) an Event of Default (as hereinafter defined) or (b) December 31, 2009, the following: (i) quarterly fees required to be

paid pursuant to 28 U.S.C. § 1930(a)(6); (ii) any fees payable to the Clerk of the Bankruptcy Court or of the District Court (as applicable) (the fees set forth in (i) and (ii) are hereinafter collectively referred to as the "Permitted Expenses"); and (iii) monthly, during the term of this Stipulation and Order the allowed administrative expenses of the Debtor's counsel and accountant in an amount not to exceed the sum of $25,000 (the "Carveout"), as set forth in the Budget, provided, however, that there shall be excluded from the Carveout, the fees and disbursements incurred, directly or indirectly, in respect of, arising from, or relating to the initiation or prosecution of any action contesting the validity, priority, and extent of the claims or liens asserted by KeyBank or the IRS, any action for preferential transfers, fraudulent conveyances, and other avoidance power or subordination claims against KeyBank or the IRS.

4. The Debtor is also authorized to make the following monthly payments: (i) $10,000 to Guy Fustine, Esq. as counsel for the Committee; (ii) $5,000 to Robert Power, CPA, as accountant for the Committee; and (iii) $10,000 to Guy Fustine, Esq., to be held in escrow in the "Creditor Fund".

5. Neither the surcharge provisions of section 506(c) of the Bankruptcy Code, nor the enhancement of collateral provisions of section 552 of the Bankruptcy Code, shall be imposed upon KeyBank or the IRS, or upon any of the Pre-Petition Collateral, the Cash Collateral, the Post-Petition Collateral, or upon the proceeds thereof.

6. After the Petition Date, interest shall accrue on the Pre-Petition Indebtedness at the non-default rate set forth in the Notes.

7. Any diminution in the value of the Pre-Petition Collateral which causes all or any part of the KeyBank's and the IRS' liens and security interests in the Pre-Petition Collateral to become unsecured shall be, and hereby is, deemed a claim entitled to priority pursuant to section 507(b) of the Bankruptcy Code ("Superpriority"); junior in priority only to the allowed fees and

expenses of the Chapter 7 Trustee appointed in the event that the instant Chapter 11 case is converted to one under Chapter 7. The Superpriority, however, shall not apply to the payments provided for in paragraph 4, including the Creditor Fund; or, to the causes of action under Chapter 5 of the Bankruptcy Code, and the proceeds thereof. The causes of action under Chapter 5 of the Code, and the proceeds thereof, shall be free and clear of any and all secured or superpriority claims referred to herein.

8. The Debtor's use of Cash Collateral shall in all respects be limited by the terms of this Stipulation and Order, including, without limitation, each of the following:

(a) the Debtor shall continue to provide all financial and other reports, which the Debtor is obligated to provide KeyBank under the Loan Documents, with copies to the attorney for the Committee;

(b) the Debtor shall not (i) incur any debt for additional money, including any request under section 364 of the Bankruptcy Code for a debtor-in-possession credit facility, unless KeyBank agrees or the Bankruptcy Court approves a section 364 loan with adequate protection to KeyBank, after notice and hearing, (ii) grant or permit the creation of a lien or security interest in any of the Debtor's property other than as provided herein, or (iii) seek any amendment or modification to this Stipulation and Order without the consent of KeyBank and the IRS;

(c) Debtor shall permit inspections and audits of its books and records during normal business hours upon forty-eight (48) hours advance written notice to the Debtor's counsel by KeyBank, the Committee or the IRS;

(d) Should KeyBank or the IRS request any type of financial informational reports from the Debtor, all documents responsive to that request shall be delivered to counsel for KeyBank, counsel for the Committee and the IRS, no later than five (5) business days from

the date the Debtor receives such request;

(e) The Debtor shall provide weekly reporting to said parties on the first day of each week of actual performance measured against the projected performance in Exhibit "A" attached hereto.

9. The Debtor hereby expressly acknowledges the validity, priority, extent and perfection of KeyBank's and the IRS' liens and security interests on and against the Pre-Petition Collateral or otherwise, and waives any and all rights it has, or may have in the future in law, equity or otherwise, and either known or unknown, to object thereto. If the instant Chapter 11 case is converted to a case under Chapter 7, the Chapter 7 trustee shall have no fewer than sixty (60) days from his/her appointment to file an objection to the validity, priority, extent or perfection of KeyBank's and the IRS' liens and security interests on and against the Pre-Petition Collateral, or of Lender's liens and security interests granted hereunder. In addition, the National Electrical Annuity Plan ("NEAP") and the National Electrical Benefit Fund ("NEBF") shall have sixty (60) days from the date of the entry of any order converting this case to Chapter 7 to object to the nature, extent, priority, validity of the liens or security interest of KeyBank or of the IRS or subordination thereof. Nothing in this order shall prevent the subordination of any tax liens under 11 U.S.C. § 724(b).

10. The occurrence of any of the following shall be an "Event of Default" under this Stipulation and Order: (a) the failure to make any payment in accordance with this Stipulation and Order; (b) the failure to grant any lien or security interest provided for in this Stipulation and Order; (c) the failure to comply with the reporting and inspection requirements of this Stipulation and Order; (d) the breach of any representation or warranty contained in this Stipulation and Order; (e) the breach of any covenant contained in this Stipulation and Order; (f) the use of Cash Collateral in a way that deviates from the Budget; (g) the appointment of a Chapter 11 trustee;

(h) the appointment of an examiner with any powers other than those set forth in section 1106(a)(3)-(4), unless Lender consents to such powers; (i) the conversion of the Debtor's case to Chapter 7; (j) the dismissal of the Debtor's case; or (k) the granting of relief from the automatic stay to permit any party to recover possession of any property used in the operation of the Debtor's business and which relief would have a material or significant impact on the Debtor's business; (l) one or more Events of Default under the Loan Documents; (m) the entry of an order pursuant to section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtor's assets; (n) the effective date of any plan of reorganization or liquidation for the Debtor; (o) entry of any order pursuant to section 364 of the Bankruptcy Code authorizing the Debtor to obtain credit; (p) the automatic stay is lifted as to any party in order to permit foreclosure on the Prepetition Collateral or the Post-Petition Collateral (q) the failure of the Debtor to achieve any of the financial projections set forth in the attached Exhibit "A"; (r) failure of the Debtor to pay Post-Petition taxes.

11. Upon the occurrence of any Event of Default (unless such Event of Default is specifically waived in writing by KeyBank and the IRS), after giving three (3) business days notice in writing, served via overnight mail and telecopier to (i) the Debtor, the Committee and their counsel, and (ii) United States Trustee, KeyBank and the IRS shall be, and are hereby, entitled to entry of an Order upon application to the Court: (a) terminating the Debtor's authority to use the Cash Collateral, and (b) vacating or modifying the automatic stay with respect to the Debtor as provided by section 362 of the Bankruptcy Code and any other restrictions on the enforcement of its liens and security interests, or any other rights, and directing the immediate turnover or delivery of title to or possession of all Cash Collateral to KeyBank, subject to Bankruptcy Court approval. KeyBank shall be entitled to an expedited hearing on three (3) days notice of its request for relief from stay or to terminate the Debtor's right to use Cash Collateral.

12. The parties reserve the right to object to the amended budget.

13. This Stipulation and Order shall be effective through and including December 31, 2009. Thereafter, the Stipulation and Order will remain in full force and effect, *provided however*, at any time the Movant may seek to terminate/modify the authority granted herein by filing the appropriate Motion with the Court, upon which time, assuming the Movant so requests, the Court will schedule an expedited hearing to consider termination/modification of the within Order.

Dated: November 5, 2009

Thomas P. Agresti, Chief Judge
U.S. Bankruptcy Court



FILED
NOV - 2009
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA
ERIE OFFICE

Dated: October 15, 2009

Approved and agreed to as to substance and form:

| | |
|---|---|
| BUCHANAN INGERSOLL & ROONEY PC | QUINN BUSECK LEEMHUIS TOOHEY & KROTO INC. |
| By:    /s/ Peter S. Russ <br>      Peter S. Russ, Esquire <br>      301 Grant Street, 20th Floor <br>      One Oxford Centre <br>      Pittsburgh, PA 15219 <br>      Attorneys for KeyBank, <br>      National Association | By:    /s/ Lawrence C. Bolla <br>      Lawrence C. Bolla, Esquire <br>      Nicholas R. Pagliari, Esquire <br>      2222 West Grandview Blvd. <br>      Erie, PA 16506-4508 <br>      Phone: (814) 833-2222 <br>      Fax: (814) 835-2076 <br>      Attorneys for Debtor, Thayer Power & <br>      Communication Line Construction Co., Inc. |
| INTERNAL REVENUE SERVICE | COMMONWEALTH OF PENNSYLVANIA OFFICE OF THE ATTORNEY GENERAL |
| By:    /s/ Edward J. Laubach, Jr. <br>      Edward J. Laubach, Jr., Esquire <br>      Senior Attorney <br>      IRS Chief Counsel <br>      William Moorhead Federal Building <br>      Room 806 <br>      1000 Liberty Avenue <br>      Pittsburgh, PA 15222 | By:    /s/ T. Lawrence Palmer <br>      T. Lawrence Palmer, Esquire <br>      564 Forbes Avenue, 5th Flr. <br>      Manor Building <br>      Pittsburgh, PA 15219 |

KNOX McLAUGHLIN GORNALL
& SENNETT, P.C.

By:    /s/ Guy C. Fustine
     Guy C. Fustine, Esquire
     Joseph F. Gula, Esquire
     120 West 10th Street
     Erie, PA 16501
     Phone: (814) 459-2800
     Fax: (814) 453-4530
     Counsel for Official Unsecured
     Creditors Committee

**Movant shall serve a copy of this order on the interested parties and file a certificate of such service within five days.**

Document #473668, v2