LAW OFFICES
# ERMAN, TEICHER, MILLER, ZUCKER & FREEDMAN
A PROFESSIONAL CORPORATION

EARLE I. ERMAN *
JULIE BETH TEICHER
DAVID M. MILLER
CRAIG E. ZUCKER
DAVID H. FREEDMAN
BARBARA A. PATEK
DIANNE S. RUHLANDT
DAVID EISENBERG
IAN S. BOLTON

* AMERICAN BANKRUPTCY BOARD OF CERTIFICATION

400 GALLERIA OFFICENTRE, SUITE 444
SOUTHFIELD, MICHIGAN 48034-2162

TELEPHONE (248) 827-4100
FACSIMILE (248) 827-4106
www.ermanteicher.com

January 29, 2010

*Via e-mail: lbolla@quinnfirm.com*

Lawrence C. Bolla, Esquire
Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.
2222 W. Grandview Boulevard
Erie, PA 16506-4508

## RE: PAYMENT ARRANGEMENT RELATED TO PURCHASE OF ASSETS OF THAYER POWER & COMMUNICATION LINE CONSTRUCTION COMPANY

Our Clients: National Electrical Annuity Plan ("NEAP")
National Electrical Benefit Fund ("NEBF")

Your Client: Thayer Power and Communication Line
Construction Company ("Debtor")
Debtor-in-Possession, Case No. 08-11904 (TPA) [USBC-WD PA]

Re: Payment of Cure Amount re: Sale of Assets

Dear Larry:

NEAP and NEBF (collectively, the "Funds") have reached an agreement in principle with regard to the Stalking Horse Bid of Thayer Investments, LLC ("Stalking Horse Bidder") in connection with its purchase of assets from the Debtor in the above-referenced proceeding. In accordance with *Order on Expedited Motion for Approval of (I) Bidding Procedures; (II) Break-Up Fee Related to the Sale of Substantially All of Debtor's Personal Property; and (III) Form and Manner of Sale Notice* (the "Bidding Order"), entered by the Bankruptcy Court on December 29, 2009 [Docket No. 337], these terms are to be placed on the record and made available to any other Qualified Bidder. In the event that the Funds are not able to conclude their agreement with the Stalking Horse Bidder by the court-ordered deadline of Monday, February 1, 2010, we are hereby sharing this information with you so that it can be communicated to any other parties who may be interested in bidding on the Debtor's assets. The Funds are willing to offer the same payment terms as currently being discussed with the Stalking Horse Bidder.

As you know, as part of the Stalking Horse Bidder's Bid, those collective bargaining agreements which require the Debtor to make fringe benefit contributions to the Funds are to be assumed by the Debtor and assigned to the Stalking Horse Bidder. In accordance with 11 U.S.C. §§365(b)(1) and 1113, payment of all past due amounts must be either paid upon assumption or

adequate assurance of payment must be provided and, therefore, the Stalking Horse Bid provides for the "cure amount" to be paid through a "payment arrangement" between the Stalking Horse Bidder and the Funds.

The following constitutes the basic terms by which the Funds would accept satisfaction of the cure amounts on an installment plan basis; however, the below is not an exact recitation of the agreement which we expect to conclude with the Stalking Horse Bidder, which agreement is still being drafted.

1. NEAP has an allowed pre-petition claim against the Debtor in the amount of $458,814.91, consisting of unpaid fringe benefit contributions of $357,904.85, accrued interest of $24,885.34, liquidated damages of $71,580.97 and audit assessments of $4,443.75. Pursuant to court order entered by the Bankruptcy Court on May 4, 2009 [Docket No. 217], Debtor has tendered payments totaling $45,000 as of December 31, 2009 toward its pre-petition indebtedness and the net amount due and owing for NEAP's pre-petition claim is $413,814.91 ["NEAP Cure Amount"].

2. NEBF has an allowed pre-petition claim against the Debtor in the amount of $380,635.84, consisting of unpaid fringe benefit contributions of $296,732.37, accrued interest of $20,113.25, liquidated damages of $59,346.47 and audit assessments of $4,443.75. Pursuant to court order entered by the Bankruptcy Court on May 4, 2009 [Docket No. 217], Debtor has tendered payments totaling $45,000 as of December 31, 2009 toward its pre-petition indebtedness and the net amount due and owing for NEBF's pre-petition claim is $335,635.84. [NEBF Cure Amount"]

3. Any successful bidder (the "Purchaser") whose bid includes the assumption and assignment of the subject collective bargaining agreements will be afforded the opportunity to satisfy the NEAP Cure Amount and the NEBF Cure Amount (collectively, the "Cure Amounts") at a reduced rate consisting of the fringe benefit contribution portion of the Cure Amounts only, subject to the timely adherence of the following terms and conditions:

    a) Upon closing of the sale (the "Closing"), the Purchaser shall tender payment of $123,350.00 to NEAP and payment of $115,964.00 to NEBF, representing the priority portion of the fringe benefit contributions which accrued during the periods of time cited in 11 U.S.C. §§507(a)(4) and (5). Said payments shall be made by cashier's check or other certified funds, separately payable to the NEAP and NEBF, and sent to their counsel: Erman, Teicher, Miller, Zucker & Freedman, P.C., 400 Galleria Officentre, Ste. 444, Southfield, Michigan 48034, Attn: Craig E. Zucker.

    b) Following the payments described in Paragraph 3(a) above, the respective balances for the unpaid fringe benefit contribution portions of the Cure Amounts will be $189,554.85 to NEAP and $135,768.37 to NEBF. Payment of these balances shall be made by the Purchaser through twenty-four (24) monthly installment payments of $7,898.12 to NEAP and $5,657.02 to NEBF, commencing on the first day of the second month following the date of Closing and continuing on the first day of each succeeding month thereafter for twenty-three (23) consecutive months until paid-in-full, time being of the essence. Said monthly payments shall be separately payable to the NEAP and NEBF in their respective amounts and sent to Erman, Teicher, Miller, Zucker & Freedman, P.C., 400 Galleria Officentre, Ste. 444, Southfield, Michigan 48034, Attn: Craig E. Zucker. All payments required under this Paragraph 3(b) are to be made so as to be received on or before their

respective due dates, time being of the essence. As long as said installment payments are made timely and in full, no interest, liquidated damages, audit assessments, attorney fees and/or costs shall accrue on the subject indebtedness.

4. A default shall exist under this Agreement upon the failure of the Purchaser to timely make any payment due under Paragraphs 3(a) or (b) above and if such non-payment is not cured within thirty (30) days after receipt of written notice thereof. Upon any uncured default, the opportunity for the Purchaser to satisfy the Cure Amounts pursuant to Paragraphs 3(a) and (b) above shall automatically be null and void and of no further force or effect and the entire NEAP Cure Amount and NEBF Cure Amount shall become immediately due and owing by the Purchaser, less any payments made, plus any and all further accrued liquidated damages, interest, audit assessments, attorney fees and/or costs, and the Funds shall be able to pursue any and all of their rights and remedies to collect the accelerated indebtedness of such Cure Amounts from the Purchaser and any other party which is, or may be, liable for such Cure Amount indebtedness.

5. As of December 31, 2009, the Debtor also owes for accrued post-petition fringe benefit contributions, interest and liquidated damages to NEAP in the amount of $17,184.55 and to NEBF in the amount of $6,619.44. The Debtor continues to incur post-petition indebtedness to the Funds under the subject collective bargaining agreements. Any unpaid post-petition amounts owed to the Funds shall be paid by the Debtor as a condition to the sale no later than the Closing, and nothing in this Agreement shall constitute a waiver or shall otherwise impair the rights of the Funds to pursue any and all parties who are, or may be, liable for such post-petition indebtedness.

6. Nothing in this payment arrangement agreement with regard to the Cure Amounts shall be construed as a modification, amendment or waiver of any terms, rights or remedies of the parties pursuant to the assumption and assignment by the Debtor to the Purchaser of the subject collective bargaining agreements, which assumption and assignment shall be incorporated as part of the sale of assets and shall occur as of the Closing, with the Purchaser thereby becoming subject to, and liable under, the subject collective bargaining agreements from the date of the Closing forward.

Very truly yours,

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

Craig E. Zucker

CEZ/dsr
cc: Harry Greenfield, Esq. (for Anderson Group & Thayer Investments)
Jennifer Hawkins, Esq. (via e-mail)

F:\FUNDS\thayer\cure amount terms re sale.doc