IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : BANKRUPTCY NO. 08-11904-TPA |
| THAYER POWER AND COMMUNICATION | : CHAPTER 11 |
| LINE CONSTRUCTION COMPANY, | : |
|     Debtor. | : |
| | : |
| THAYER POWER AND COMMUNICATION | : Related to Document No. 302 |
| LINE CONSTRUCTION COMPANY, | : |
|     Movant, | : |
| | : |
| v. | : |
| | : |
| THE ANDERSON GROUP, LLC; KEYBANK, | : |
| N.A.; UNITED STATES OF AMERICA, | : |
| INTERNAL REVENUE SERVICE; THE | : Hearing: February 19, 2010 at 10:00 A.M. |
| COMMONWEALTH OF PENNSYLVANIA, | : |
| OFFICE OF THE ATTORNEY GENERAL; | : |
| AND THE OFFICIAL COMMITTEE OF | : |
| UNSECURED CREDITORS, | : |
|     Respondents. | : |

## ORDER

Thayer Power and Communication Line Construction Company ("Debtor") filed a *Motion for Order (I) Approving Sales of Substantially all Personal Property of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests Outside the Ordinary Course of Business, (ii) Authorizing Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (iii) Granting Related Relief* ("Sale Motion") at Document No. 302. Responses were filed by GMAC at Document No. 381, the National Electrical Annuity Plan ("NEAP") and the National Electrical Benefit Fund ("NEBF") at Document No. 393, and the Official Committee of Unsecured Creditors ("Creditors Committee") at Document No. 396. Sargent Electric Company ("Sargent") filed at Response to the Objection of NEAP and NEBF at Document No. 397. A hearing was held on February 12, 2010.

1

Sargent appeared at the hearing and offered a competing bid to the original offer submitted by The Anderson Group, LLC. ("Anderson"). The cash portion of the Sargent bid exceeded that of Anderson by $400,000 but other terms of the Sargent bid differed. Unlike Anderson, Sargent did not propose to assume the Debtor's labor contacts and certain other executory contracts and unexpired leases. Those differences resulted in the Debtor remaining responsible for additional priority and general unsecured claims.

During the hearing, the Court attempted to better understand the nature of the competing bid by questioning Sargent as to each aspect of its bid. During the process, Sargent clarified the amounts that it would pay for administrative expenses, priority claims, and for the increase in unsecured claims such that, other than the $400,000 difference in the cash portion of the bid, the net benefit to the Estate in both the Anderson and Sargent bids was equalized. Assuming Anderson was not ultimately the successful bidder and no other bids received, Anderson may be entitled up to a $150,000 "stalking horse" fee, which would leave a $250,000 net benefit to the estate from the Sargent bid.

Under either bid, it became clear during the hearing that GMAC will be paid in full at closing. As a result, its objection to the sale was withdrawn. The Creditors Committee also withdrew its objections in the form of a "Response" based on certain stipulations placed on the record to indicate that: (1) all Chapter 5 causes of action, other than under *11 U.S.C. §542* will be assigned to the Creditors Committee; (2) consistent with a prior Order, $160,000 held in a creditors fund will go to unsecured creditors as the "law of the case" subject to further Court Order and assuming all administrative expenses are otherwise paid; (3) an additional $70,000 due the

2

creditors fund under a cash collateral stipulation is to be paid at closing; (4) equity from the sale of vehicles owned by James Thayer will be split between the unsecured creditors and the Estate; and, (5) Key Bank, N.A., the Debtor's secured creditor, agreed, subject to final Court approval, five (5%) percent of the first $400,000 increase in the sales price and two percent of any further increase will go to unsecured creditors.

NEAP and NEBF also objected to a sale to Sargent since Sargent's proposal, as previously noted, did not include the assumption and assignment of the Debtor's union contacts or provide for payment of past due amounts due to NEAP and NEBF as did the private offer of the Anderson Group. NEAP and NEBF further objected to a sale "free and clear" of their rights to pursue a purchaser under "successor liability" theories. An issue was also raised regarding the application of $90,000 in post petition payments previously made to NEAP and NEBF by the Debtor. NEAP and NEBF applied the post petition payments to the unsecured portion of its claims. Other Parties assert that those payments should have been applied to the priority portion of the claims. For the reasons stated on the record in accord with the representations of Counsel, the Court finds that these post petition payments are properly applied to the priority portion of the NEAP and NEBF claims.

NEAP and NEBF agree that pursuant to *11 U.S.C. § 363(f)* the Court may permit a sale free and clear of their potential successor liability claims. NEAP and NEBF simply don't believe it appropriate to do so under the circumstances of this sale. They take this position despite that Sargent has indicated an intent to employ Debtor's union members to the extent possible and

NEAP and NEBF confirm that the individual workers will be paid their union pension and benefits even though the Debtor's obligations remain unpaid. Thus, any "societal needs" to be considered have been minimized if not eliminated. Under *In re Trans World Airlines, Inc.,* 322 F.3d 283 (3d. Cir. 2003), NEAP and NEBF's claims qualify as interests in property allowing for the Debtor's assets to be sold free and clear of those interests.

After the Sargent bid was "clarified," the Official Creditors' Committee supported the bid as the "highest and best" offer, requesting rejection of the Anderson private offer. Counsel for the Debtor confirmed at the conclusion of the "clarification" process that, but for the additional $400,000 on the table as a result of the Sargent bid, for purposes of the Estate's interests, the bids were "absolutely equal."

For the foregoing reasons and for the reasons set forth on the record, the Court finds that the sale of the Debtor's assets will be free and clear of any successor liability claims of NEAP and NEBF. Furthermore, as a result of the extensive review of the pending bids and as otherwise stated on the record, the Court finds that all parties proceeded in good faith and that, ultimately, the Sargent bid was the highest and best offer.

*AND NOW* this *16th* day of *February, 2010*, it is hereby **ORDERED, ADJUDGED and DECREED** that, subject to the above findings and conclusions of law:

(1) Court Room *Exhibits "1" through "4"* are *ADMITTED* and made part of the record.

(2) The private offer of Anderson Group is **DENIED** and the competing bid of Sargent, as set forth in Court Room Exhibit "2," as clarified at the February 12, 2010 sale hearing and as further described on Court Room Exhibit "4", is **ACCEPTED** as the current, "highest and best offer" for the Debtor's assets which are subject to sale.

(3) The hearing on the above matter is continued to *February 19, 2010 at 10:00 A.M.* in the Bankruptcy Courtroom, U.S. Courthouse, 17 S. Park Row, Erie, PA at which time a *public auction* will be conducted solely involving the "cash" portion of the Sargent bid, i.e., $2,500,000, with increments of $100,000, the other terms of the Sargent bid as previously identified not being subject to modification.



Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
    Lawrence C. Bolla, Esq.
    Dianne S. Ruhlandt, Esq.
    Gary V. Skiba, Esq.
    Harry W. Greenfield, Esq.
    Russell R. Sanders, Esq.
    Guy C. Fustine, Esq.
    Philip J. Uher, Esq.
    David W. Lampl, Esq.

**FILED**
FEB 1 8 2010
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA
ERIE OFFICE